# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**TOMMY RAY HOOK and**
**CHARLES MONTANO,**

        **Plaintiffs,**

**v.**                                    **CIV. NO.   05-356 JH/WPL**

**THE REGENTS OF THE UNIVERSITY**
**OF CALIFORNIA, d/b/a LOS ALAMOS**
**NATIONAL LABORATORY, RICHARD**
**MARQUEZ, JOHN BRETZKE, VERNON**
**BROWN, PATRICK REED, and WILLIAM**
**BARR,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART PLAINTIFFS' MOTION FOR
## ACCESS TO AND RETURN OF PRIVILEGED MATERIALS

Plaintiffs Tommy Ray Hook  and Charles Montano filed suit against the Regents of the University of California, d/b/a Los Alamos National Laboratory (the Laboratory), and five individual University of California officials for allegedly violating their free speech rights guaranteed by the First Amendment and by the California Whistleblower Protection Act.[1] Hook has filed a motion  to gain access to and for the return of attorney-client privileged materials that he claims the Laboratory seized from the hard drive on his computer and from other documents found in his office.  [Doc. 23]

---

[1] I recently granted Plaintiffs' Motion for Leave to File Amended Complaint, which allows Plaintiffs to add a claim against a sixth University of California official. [Doc. 38]

I.       Facts

Hook has been an employee of the Laboratory since March 1989, and during that time has served in a variety of positions. His most recent position with the Laboratory was in the Prime Contract Office. Hook was injured in an altercation that occurred while he was off-work on June 5, 2005. When it became clear that Hook would not be able to return to work by August 12, 2005, Hook sought and was granted disability retirement from the Laboratory to be effective on August 12, 2005.

Hook was advised by his supervisor, Joe Ortega, that Hook would be allowed to come to his office on August 9, 2005 to retrieve personal items, to review and retrieve documents from his office and computer, and to purge his computer of other documents. On August 4, 2005 Ortega advised Hook that Hook would not be allowed access to his computer or to download its contents on August 9, 2005. Hook's counsel immediately sent an e-mail to defense counsel requesting that the Laboratory "take appropriate steps to preserve all contents of [Hook's] computer intact," including downloading the contents to a zip drive and storing the zip drive in a secure location until all issues related to production can be resolved. [Doc. 25, Exhibit 1] On August 5, 2005 the Laboratory had the hard drive removed from Hook's computer and stored it in a safe in Laboratory Counsel's office, together with work papers and folders from Hook's office. On August 9, 2005 Hook's counsel asserted that the computer and office files contained materials protected by the attorney-client privilege and demanded that the Laboratory and its counsel not review them. [Doc. 25, Exhibit 2]

Hook asserts that his previous supervisor, Bill Wadt, expressly granted him permission to use his work computer to communicate with his attorneys regarding his whistleblower retaliation issues. Hook established a password known only to him and the system administrator to access certain files

2

and e-mail messages, and segregated attorney-client and confidential e-mails into separate folders on the computer. [Doc. 25, Exhibit 9 at ¶¶ 2-3].

Bill Wadt testified that he did not recall any discussions with Hook on whether Hook could use Laboratory time to communicate with his attorneys. Wadt specifically denied that he ever gave any assurance to Hook that documents in his office or on his computer would or could be kept confidential. [Doc. 33, Exhibit B at ¶ 7]

## II.    Discussion

A. Unilateral seizure of attorney-client privileged materials

Hook claims that the Laboratory "raid[ed]" his office and "unilaterally" seized his computer "without the knowledge of or permission from Hook, and without consultation with Plaintiffs' counsel." Motion for Access, p. 3 at ¶ 7 [Doc. 23]; Memorandum of Law In Support of Motion, pp. 4, 6 [Doc. 24] Hook asserts that he did not authorize the Laboratory to seize his computer, and that the Laboratory has created the "highly unusual situation where they have sole custody of Hook's computer and documents containing privileged and sensitive communications between attorney and client." Memorandum of Law In Support of Motion, pp. 3-4, 6-7 [Doc. 24] It is difficult to take this claim seriously. Hook specifically requested that the Laboratory preserve the contents of his computer intact by downloading the contents to a zip drive and storing the zip drive in a secure location until all issues concerning production had been resolved. It was reasonable for the Laboratory, in response to Hook's request, to enter his office to secure the hard drive. The Laboratory complied with Hook's request, and now faces criticism from Hook for complying with his request.

Hook argues that he had a reasonable expectation of privacy in the use of his computer under the University of California Whistleblower Protection Policy and University of California

Whistleblower Policy. Memorandum in Support of Motion for Access, pp. 11-12. [Doc. 24] However, he fails to cite any specific part of either Policy in support of his argument, and it is not my job to search the record to find support for a party's arguments.

The Laboratory has several policies and procedures that govern Internet use by its employees. Although the Laboratory permits "occasional incidental use" of email and the Internet, it retains the right to audit or access such use:

> NOTE: Because computer equipment and electronic information resources are government resources, the Laboratory or the federal government personnel may, without notice, audit or access any user's computer system or data communications in furtherance of their official duties. Employees who use government resources for personal use have no expectation of privacy.

Administration Manual 701.10 [Doc. 25, Exhibit 3] In addition, the Laboratory has a "splash screen" that appears every time that a user logs onto his computer which informs the user that any use of the system "may be intercepted, monitored, recorded copied, audited, inspected, and disclosed" and that use of the system constitutes consent to such actions. *Id.* The "splash screen" also informs users that they have no explicit or implicit expectation of privacy in their use of the system. *Id.*

Given the Laboratory's policies and procedures concerning use of computers, Hook had no reasonable expectation of privacy as to his use of his office computer. *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002) ("Not that there can't be a right of privacy . . . in employer-owned equipment furnished to an employee for use in his place of employment. (Citations omitted) If the employer equips the employee's office with a safe or file cabinet or other receptacle in which to keep his private papers, he can assume that the contents of the safe are private. But Glenayre had announced that it could inspect the laptops that it furnished for the use of its employees, and this destroyed any reasonable expectation of privacy that Muick might have had and so scotches his

claim.") *See also United States v. Thorn*, 375 F.3d 679, 683 (8th Cir. 2004) *vacated on other grounds*, 543 U.S. ___, 125 S.Ct. 738 (2005) (In light of the agency's computer use policy, which informed employees that they did not have any personal privacy rights regarding their use of the computer system, employee had no legitimate expectation of privacy as to his use of the office computer); *United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 2002) ("Oklahoma State University [computer] policies and procedures prevent its employees from reasonably expecting privacy in data downloaded from the Internet onto University computers."); *cf. United States v. Slanina*, 283 F.3d 670, 676-77 (5th Cir. 2002), *vacated on other grounds by* 537 U.S. 802 (2002), *on appeal after remand* 359 F.3d 356, 358 (5th Cir. 2004); and *Leventhal v. Knapek*, 266 F.3d 64, 73-74 (2d Cir. 2001) (recognizing employee's reasonable expectation of privacy in contents of office computer when employer had not disseminated any policy limiting personal use of the computer); *People v. Jiang*, 33 Cal.Rptr.3d 184, 204 (Ct. App. 2005) (employee had a reasonable expectation of privacy in contents of office computer where employer did not preclude personal use of computer and did not retain the right to copy or disclose the contents of the computer).

Although the Laboratory has argued that the attorney-client privilege does not apply to materials stored on Hook's computer, it has clearly stated that it has no desire to review the communications between Hook and his attorneys. Response to Motion for Access, p. 2. [Doc. 33] The Laboratory has also not refused to produce the materials requested, but the parties disagree about how the materials will be produced.[2] I can understand Hook's reluctance to have a computer technician employed by the Laboratory review the hard drive to attempt to discern attorney-client

---

[2] Given that the dispute is over the procedure for production, the parties have spent many pages briefing and arguing what can only be described as tangential issues.

privileged communications.[3] Because Hook worked in the Prime Contract Office and the Laboratory has not asserted that the materials on Hook's computer or in his office implicate national security or intellectual property rights, I believe Hook's proposal for production is appropriate. The Laboratory shall, without accessing or reading the documents, make a mirror copy of all documents, programs and files on the computer and removed from Hook's office, and provide them to Hook's counsel. Hook's counsel, within two weeks, shall prepare a privilege log and submit it counsel for the Laboratory. The Laboratory will review the log and, within two weeks, if necessary, file a Motion with the Court concerning any disputes regarding the designations. Once this process is completed, a neutral, mutually acceptable third party will remove the privileged materials from all computers and files in the Laboratory's possession.

B. Disqualification of counsel

Hook requests that counsel for the Laboratory be disqualified if they or their agents have reviewed the documents on Hook's hard drive or in his office. Memorandum in Support of Motion, pp. 15-17 [Doc. 24] Counsel for the Laboratory has certified that no Laboratory employee or attorney has reviewed any of the documents that are the subject of Hook's Motion. Response to Motion, p. 20 [Doc. 33] If Hook does not accept this representation, I am prepared to take testimony on this issue. Otherwise, I accept counsel's certification and deny Hook's request that counsel for the Laboratory be disqualified.

---

[3] The Albuquerque Journal recently reported that Sandia National Laboratories violated federal regulations for several years by recording laboratory security workers' telephone calls without consent and by disabling audible beeps made by the recording devices which are intended to remind users that the call is being taped. *Sandia Stopped Recording Calls*, Albuq. Journal, October 7, 2005, at B3.

IT IS SO ORDERED.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

7