IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TOMMY RAY HOOK and
CHARLES MONTANO,

          Plaintiffs,

vs.                                   No. CIV. 05-356 JH/WPL

THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA d/b/a LOS ALAMOS
NATIONAL LABORATORY, et al.,

          Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on *Plaintiff Charles Montano's Motion for Judgment on the Pleadings Regarding Defendants' Counterclaim* [Doc. No. 75], and *Counterclaimant's Motion for Summary Judgment on Its Counterclaim Against Charles Montano* [Doc. No 77]. The issue raised by both motions is the same: whether Defendant The Regents of the University of California d/b/a Los Alamos National Laboratory ("the University") and the individual Defendants have a viable counterclaim against Plaintiff Charles Montano ("Montano") for breaching a Settlement Agreement and Release ("the Release") by filing his Complaint in this case, and if so, whether they are entitled to summary judgment on that counterclaim. Because the Court concludes that Montano's filing of the original and amended Complaints did constitute a breach of the Release, Montano's motion to dismiss will be denied, and the Defendants' motion for summary judgment will be granted.

## LEGAL STANDARD

The Court reviews a motion for judgment on the pleadings under Rule 12(c), such as that filed

by Montano, using the same standard that applies to a Rule 12(b)(6) motion. *See Aspenwood Inv. Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004). In so doing, the Court "must accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Park University Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006). Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* (citing *United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000) (citing Fed. R. Civ. P. 12(c))).

In contrast, the University's motion for summary judgment is subject to a different standard. The court must construe the factual record and all reasonable inferences to be drawn therefrom in the light most favorable to Montano. *Trask v. Franco*, 446 F.3d 1036, 1045 (10th Cir. 2006). Summary judgment is appropriate only where there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving

2

party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of his claim. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## **FACTS**

The facts in this case are essentially undisputed. In February of 1996, Montano filed a "whistleblowing" complaint against Los Alamos National Laboratory ("LANL") with the United States Department of Energy, which he updated in April of 1996 ("DOE Complaint"). In the DOE Complaint, Montano alleged, *inter alia*, that he had disclosed alleged mismanagement of LANL by the University to the New Mexico Congressional delegation and the DOE, complained to the New Mexico Congressional delegation and the DOE about alleged misconduct in connection with a reduction in force at LANL in 1995, advocated for employee rights and workplace diversity, urged the DOE to open up competitive bidding for management of LANL because of alleged improprieties in the University's management, and met with DOE officials in Washington, D.C. DOE's report

regarding the DOE Complaint further revealed that between 1993 and 1997, Montano had disclosed concerns regarding LANL's alleged application of costs against inappropriate cost objectives, reported at a public forum meeting his allegation that LANL was not complying with contractual and federal Equal Employment Opportunity requirements, and reported to Senators Domenici and Bingaman, as well as Representative Richardson, that the University was allegedly violating various federal laws and requirements. Montano's DOE Complaint further alleged that he suffered retaliation for these actions, including receiving an unusually small raise, being denied a position as group leader, being reassigned from the Internal Audit Group to the Contract Audit Group, receiving a negative performance appraisal in 1996, having limitations placed on his contact with officials outside the University, and being denied opportunities for advancement within LANL.

On May 11, 2000, Montano and the University formalized a Settlement Agreement and Release ("Release") of all of Montano's claims "arising from or relating to the facts at issue" in the DOE Complaint. Doc. No. 78, Ex. A. The Release provides, in relevant part:

> 8. [Montano] agrees not to institute, join or cause to be instituted in any state or federal court, or in any administrative or adjudicative body of any nature, including any administrative or adjudicative body of LANL, any action *arising from or relating to the facts at issue in [Montano's administrative lawsuit]*.
>
> 9. [Montano] and LANL understand and agree that this is an Agreement to resolve any and all issues concerning [Montano's] current and past employment with LANL through the legally effective date of this Agreement . . . .
>
> \* \* \*
>
> 12. For the consideration described herein, [Montano] hereby releases and forever discharges LANL from all charges, claims, complaints, rights, demands, actions, and causes of action of every kind, nature, and character which [Montano] has, ever had, *or may in the future have, with respect to or relating in any manner to* [Montano's] efforts to seek employment, current employment or former employment with LANL through the legally effective date of this Agreement whether known or unknown . . . . [Montano] agrees that any and all claims for *future damages*

4

>    *arising under the alleged continuation of the effects of any past action, omission or event through the legally effective date of this Agreement are included in this release.*
>
>    13.   If any party commences an action . . . to enforce this Agreement the prevailing party shall recover such reasonable attorneys' fees, costs, and expenses actually incurred in such action . . . .
>
>    14.   If [Montano] breaks the promises contained in this Agreement and files a claim or lawsuit based on claims that have been released herein, [Montano] shall pay for all costs, including attorneys' fees, incurred by LANL in defending such claims and will tender back with appropriate interest to LANL the consideration described in this Agreement.
>
>    15.   [Montano] and LANL understand and agree that this Agreement shall not be, and shall not be deemed or construed to be, a precedent or model for the resolution or settlement of any future charge, complaint, grievance, lawsuit or other proceeding resulting from *similar or different circumstances*.
>
>    16.   [Montano] and LANL agree that this Agreement represents and contains a full settlement and resolution of all disputes and issues between the parties relating in any manner to [Montano's] current employment with LANL, [Montano's] efforts to find another position at LANL, or [Montano's] former employment with LANL through the legally effective date of this Agreement. Moreover, it is understood and agreed that this Agreement is a full and final general release applying to all known, *unknown and unanticipated damages or losses to [Montano] resulting from or in any way related to* his efforts to seek additional employment, [Montano's] current employment or [Montano's] former employment with LANL *through the legally effective date of this Agreement.* . . .

(emphasis added). The University paid Montano and his attorneys more than $30,000 in consideration for the settlement of the DOE Complaint.

In March of 2005, Montano filed his original Complaint in state district court, which the Defendants then removed to this federal district court. Doc. No. 1. That Complaint contains a lengthy recitation of events that occurred prior to the effective date of the Release. In fact, in his original Complaint Montano alleged that the University had retaliated against him from 1993 to 1999 by denying him a job as Team Lead for Cost Accounting, rejecting his application for Internal Audit

5

Lead, transferring him from the Internal Audit group to the Contract Audit group, giving him a negative performance evaluation in 1996, giving him a small salary increase, removing him from several projects, and restricting his ability to report to outside agencies. Original Complaint (Ex. A to Doc. No. 1) at ¶¶ 18-26, 32-35, 38. The original Complaint also alleges that the University has committed further acts of retaliation against him after the effective date of the Release in 2000. Original Complaint at ¶¶ 42-111.

On April 15, 2005, Defendants filed their Answer to the original Complaint and asserted a counterclaim against Montano for breach of the Release. Doc. No. 2. The Counterclaim asserts that "Plaintiff Montano makes numerous allegations concerning his employment at LANL before the effective date of the Release and grounds his two claims in substantial part on events and actions occurring before the effective date of the Release," and that "his filing of the instant lawsuit with those allegations and claims is a breach of the Release." Counterclaim at ¶¶ 7-8. On May 9, 2005, Montano filed his reply to the counterclaim (Doc. No. 4), in which he denied that he was seeking damages for pre-Release events listed in the Complaint. In August of 2005—despite the fact that he had already asserted that he was not seeking to recover damages based on the University's pre-Release acts—Montano served the University with detailed discovery requests regarding events that occurred in the 1993-1999 time frame, regarding which Montano and the University had settled. *See* Doc. No. 78, Ex. H, "Plaintiff Charles Montano's First Set of Interrogatories to Defendant Regents of the University of California." *See also* Doc. No. 15. These included interrogatories in which Montano asked the University, *inter alia*, to provide information regarding its decision to transfer Montano in the spring of 1996, to identify all reasons that Montano received a "needs improvement" on his August 1996 performance appraisal and all persons having input into the performance

6

appraisal, to identify all communications or meetings among LANL or University officials regarding accusations or criticisms of Montano in 1995, and to identify all reasons LANL did not select Montano for the positions of Team Head for Cost Accounting, unofficial team leader of the audit group, and Internal Audit Team Leader. Then, on October 17, 2005, Plaintiffs filed their Amended Complaint, which is substantially similar to the original Complaint and contains virtually the same allegations against the University regarding pre-Release events. However, the Amended Complaint did add a footnote acknowledging the Release and stating: "The allegations contained herein regarding events occurring prior to the effective date of that Release are set forth to show defendants' history of the retaliation against plaintiffs ('background evidence') and defendants' retaliatory animus against plaintiffs, which motivated their post-Release actions. Plaintiff Montano does not seek to recover damages for events occurring prior to the effective date of the Release." Amended Complaint, Doc. No. 47 at p.6. Defendants answered the Amended Complaint and reasserted their counterclaim, but did not address the footnote added to the Amended Complaint.

Several months later, the parties filed their cross motions regarding Defendants' counterclaim for breach of contract. On January 26, 2006, Montano filed his motion for judgment on the pleadings, and on February 1, 2006, the Laboratory filed its motion for summary judgment.

## DISCUSSION

The question presented by both motions is whether Montano breached the Release by filing his Complaint and Amended Complaint, both of which rely heavily on pre-Release events, and by pursuing discovery relating directly to his released claims. Defendants argue that by pleading facts relating to pre-Release events and pursuing discovery as to those events, Montano has demonstrated that his current causes of action both "arise from" and "relate to" his settled claims, and therefore are

7

barred by the Release. While they acknowledge that the Release does not prevent Montano from asserting claims based on new allegations of harassment or retaliation occurring after the effective date of the Release, Defendants also contend that if the pre-Release events motivated the Defendants' alleged post-Release retaliation as asserted by Montano, then Defendants' post-Release actions are necessarily a "continuation of the effects of" pre-Release events and therefore barred by the Release. Defendants also contend that Montano's disclaimer that he is not seeking money damages for the pre-Release events alleged in the Complaint is insufficient because the broad terms of the Release "bought future peace," in that the University is now free not only from having to pay damages on the released claims, but also from having to re-litigate those pre-Release events in Court. Defendants also ask the Court to hold Montano liable for the attorney's fees they incurred in bringing the counterclaim, to dismiss all pre-Release claims, to enjoin Montano from relitigating pre-Release events in discovery, and order Montano to return to the University all proceeds paid to him under the Release.

Montano, in turn, argues that nothing in the Release prohibits him from asserting claims arising after the effective date of the Release, nor does it bar him from using evidence of pre-Release conduct to show motive or to provide context for claims that arose after the effective date of the Release. According to Montano, he is entitled to allege, conduct discovery regarding, and prove at trial the history of his employment relationship with Defendants in order to place the alleged post-Release retaliation in its proper context as part of Defendants' long standing course of retaliatory conduct. Montano also argues that the Defendants have no viable counterclaim against his Amended Complaint. He bases this argument on the fact that, in their answer to his Amended Complaint, Defendants merely reasserted and incorporated by reference the factual allegations and legal claims set forth in their counterclaim to his Original Complaint.

**I.      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

As discussed above, the Court may consider additional materials outside the pleadings in ruling on a motion for summary judgment. In considering the Defendants' motion for summary judgment on their counterclaim, the Court has in fact considered the materials submitted by the parties and has concluded that they do not create a genuine issue of material fact.

First, the Court must consider whether Montano violated the Release when he filed his original Complaint. Under the law of New Mexico, releases are contractual in nature and thus governed by traditional principles of contract law. *Ratzlaff v. Seven Bar Flying Serv., Inc.*, 98 N.M. 159, 162, 646 P.2d 586, 589 (Ct. App. 1982); *see Sitterly v. Matthew*s, 2000-NMCA-037, ¶ 15, 129 N.M. 134, 2 P.3d 871. Further, the Court must construe the language of the entire contract as a whole. *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999-NMSC-006, ¶ 27, 127 N.M. 1. "Whether a contractual provision is ambiguous is a question of law, which we review de novo." *Id.*; *see also Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781-82, 845 P.2d 1232, 1235-36 (1993). The standard to be applied in determining whether a contract is subject to equally logical but conflicting interpretations is the same standard applied in a motion for summary judgment. "If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law," *id.*, and summary judgment would be proper. On the other hand, "[i]f the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists," and summary judgment would not be proper. *Id.*

In this case, neither Montano nor the University contends that the Release is ambiguous; rather, both argue that it unequivocally supports their position. The Court agrees with the University that the express and unambiguous language of the Release prohibits Montano from filing a complaint

9

in which he seeks to recover for claims arising from the University's alleged retaliation against him prior to the effective date of the Release. Before continuing with the analysis, the Court must pause to note that both the original and amended Complaints can be described only as prolix and inappropriate, as they contain many superfluous details, irrelevant history, and self-serving statements regarding settled events. The Court can only conclude that Plaintiffs included such an unnecessary level of detail in their complaints as a method of combative pretrial posturing, but the complaints far exceed the "short and plain statement of the claim" required by Rule 8 of the Federal Rules of Civil Procedure. In any event, a reading of the plain language of the original Complaint indicates that in filing it, Montano violated the Release because it asserts claims arising from both settled, pre-Release events, as well as unlitigated, post-Release events. The Court reaches this conclusion because the original Complaint contains numerous factual allegations of pre-Release protected activities by Montano and pre-Release retaliation against him by Defendants, followed by Plaintiffs' two legal claims, both of which purport to be based upon *all* of the facts alleged in the original Complaint. *See* original Complaint at ¶¶ 20-26, 32-35, 38, 112, 123. Thus, the original Complaint unequivocally asserts claims for recovery of damages based upon pre-Release events, and it contains no indication or limitation to support an inference to the contrary. Whatever Montano and his counsel's unexpressed subjective intentions with regard to the claims asserted in the original Complaint, the only objectively reasonable reading of that pleading is that Montano was seeking to assert claims stemming from and to recover damages for pre-Release events. Thus, the original Complaint violates the express and unambiguous terms of the Release.

Shortly after Defendants filed their Counterclaim against Montano, he replied that he did not intend to recover damages for pre-Release events. Further, Plaintiffs filed an Amended Complaint

10

containing many of the same factual allegations regarding pre-Release events, but with an express disclaimer stating that they were not seeking to recover damages for those events, but merely alleging them as "background facts" and as evidence of Defendants' motive to engage in further retaliation against Plaintiffs after the effective date of the Release.  Montano argues that by making these disclaimers, he is not in breach of the terms of the Release.  Defendants contend that even with this clarification, the Amended Complaint violates Paragraphs 8, 12 and 16 of the Release because the post-Release claims "relate to," "result from," and "arise from" the pre-Release claims.  The Court agrees with the Defendants.  As pled by Montano, the claims in the Amended Complaint expressly arise from, result from, and relate to Defendants' pre-Release actions—because, according to Montano, those pre-Release events directly motivated alleged post-Release retaliation—and therefore the Amended Complaint violates Paragraphs 8, 12 and 16 of the Release.  Stated another way, Montano's Amended Complaint alleges that pre-Release events motivated the Defendants' alleged post-Release retaliation; therefore, Defendants' post-Release claims are necessarily a "continuation of the effects of" pre-Release events and are barred by Paragraph 12 of the Release.  Further, as pled by Montano, his post-Release claims are simply "unknown and unanticipated damages or losses [] resulting from or in any way related to" his pre-Release employment with LANL, and therefore are barred by Paragraph 16 of the Release.  The fact that Montano has sought extensive discovery regarding pre-Release events and claims further supports this conclusion.  There would be no need for Montano to seek such discovery if the current claims did not "arise from" or were not "related to" his released claims.

      The Court finds Montano's remaining arguments to be unavailing.  First, Montano argues that he is entitled to conduct discovery regarding and to prove at trial the history of his employment

relationship with the University in order to demonstrate its allegedly long-standing course of retaliatory conduct. In support of his argument, Montano cites *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and *West v. Norton*, 376 F. Supp. 2d 1105 (D.N.M. 2004) (Browning, J.). Both *Morgan* and *Norton* were Title VII discrimination cases in which some of the employer's discriminatory acts took place outside the limitations period. In *Morgan*, the Supreme Court observed in dicta that a plaintiff could use these time-barred acts of discrimination as "background evidence" to support the timely claims because Title VII did not prohibit such use. 536 U.S. at 113. *See also Morgan*, 376 F. Supp. 2d at 1123. However, neither *Morgan* nor *Norton* addressed the question at issue in this non-Title VII case, which is whether a plaintiff who has litigated, settled, and expressly agreed to waive all future claims arising from or related to the settled claims may later re-litigate the settled claims and use them as evidence to support the new claims. In short, *Morgan* and *Norton* are inapposite.

Next, Montano argues that regardless of the Release that he signed, his co-Plaintiff, Tommy Ray Hook ("Hook"), is entitled to allege, discover, and prove a pattern of retaliatory conduct by Defendants, including pre-Release events, because Hook was not a party to the Release. Thus, reasons Montano, "it defies common sense to say that Mr. Montano must file and litigate a separate lawsuit merely because Mr. Hook is offering evidence of the pre-Release retaliation against Mr. Montano to support his claims." Doc. No. 85 at p.12. Again, Montano's argument misses the mark. Montano cannot escape the bargain he made in the Release merely by filing a joint complaint with Hook on the grounds that it is more efficient. Hook and Montano are in different procedural and legal positions with regard to claims that accrued prior to the spring of 2000, but that fact sheds no light on the ultimate question, which is whether the claims asserted by Montano violate the Release.

Montano has violated the terms of the Release, regardless of any separate rights that Hook might have to support his claims with pre-Release retaliatory conduct against Montano.

Finally, Montano argues that Defendants' counterclaim is invalid because they failed to plead it properly.  Specifically, Montano contends that while the Defendants' original counterclaim addressed the original Complaint, the original counterclaim was superceded by the filing of the Amended Complaint.  In the amended counterclaim filed in response to the Amended Complaint, Defendants did not reallege all of the facts, legal claims, and requests for relief set forth in their original counterclaim. Instead, they incorporated the original counterclaim by specific reference into their amended counterclaim.  Montano argues that this method of pleading was insufficient, and he argues on that grounds that Defendants are not entitled to summary judgment.  The Court finds this argument to be without merit.  If Defendants had entirely omitted the counterclaim from their answer to the Amended Complaint, in all likelihood they would have waived the counterclaim.  However, that is not what transpired.  By reasserting the Counterclaim by specific reference to and incorporation of the original counterclaim, the Defendants preserved their position and put Montano on notice of the claims against him.  The Federal Rules of Civil Procedure require nothing more.

In granting summary judgment in favor of the Defendants, the Court recognizes that the Release does not prohibit Montano from pursuing any and all post-Release claims that he might have against the University either now or in the future.  However, under the current pleadings and evidentiary record, the claims Montano has asserted in this case do violate the Release, and therefore he has breached its terms.  As a result, the Defendants are entitled to summary judgment in their favor on their counterclaim against Montano based upon his filing of both the original and amended complaints, as well as their pursuit of discovery on pre-Release events that are the subject of a

13

settlement agreement between Montano and the University. At this time, the Court makes no determination as to the precise extent of Defendants' damages, as that issue is beyond the scope of this Memorandum Opinion and Order.

## II.     MONTANO'S MOTION FOR JUDGMENT ON THE PLEADINGS

As a general rule, in deciding a motion to dismiss or for judgment on the pleadings, a federal court may only consider facts alleged within the complaint (or in this case, within the counterclaim). *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). There are exceptions to this rule. For example, a district court may review "mere argument contained in a memorandum in opposition to dismiss" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (quotation omitted). In addition, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Applying this standard, the Court concludes that it may consider the following documents: (1) the Release [Ex. 1 to Doc. No. 75], as it is the central document pertaining to the Counterclaim for breach of contract, and its authenticity is undisputed, (2) the Plaintiffs' original Complaint, as its authenticity is undisputed, and the Court cannot determine if Montano breached the Release by filing the Complaint without reference to the Complaint, (3) the Amended Complaint, for the same reasons as the original Complaint, and (4) the Amended Counterclaim.

Nothing in Montano's motion for judgment on the pleadings, or in the more restricted record available for review on such a motion, alters in any way the Court's reasoning and analysis, or the conclusion that Montano has breached the Release agreement with the University. In accordance with the foregoing, the Court finds that Montano's motion for judgment on the pleadings will be

14

denied.

## CONCLUSION

Notwithstanding the Court's rulings set forth herein, the Court expresses no opinion whether evidence of Defendants' alleged pre-Release retaliation against Montano would be admissible at trial, and if so, to what extent and for what purpose. The question of admissibility of evidence is outside the scope of this Memorandum Opinion and Order and is best left to a pretrial motion in limine, in which the parties can more fully state their positions on the issue. However, the parties should be aware that the Court does not intend to permit the trial of this case to degenerate into an extensive, time-consuming reexamination of disputed pre-Release events and claims already settled by the parties.

**IT IS THEREFORE ORDERED** that *Plaintiff Charles Montano's Motion for Judgment on the Pleadings Regarding Defendants' Counterclaim* [Doc. No. 75] is **DENIED**, and *Counterclaimant's Motion for Summary Judgment on Its Counterclaim Against Charles Montano* [Doc. No 77] is **GRANTED**. The Court will address the issue of damages in a separate Order. Defendants must file their opening brief on damages within 30 days of entry of this Memorandum Opinion and Order.

_____
**UNITED STATES DISTRICT JUDGE**