IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TOMMY RAY HOOK and
CHARLES MONTANO,

        Plaintiffs,

vs.                               No. CIV. 05-356 JH/WPL

THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA d/b/a LOS ALAMOS
NATIONAL LABORATORY, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

In this Memorandum Opinion and Order, the Court addresses the motions for summary judgment filed by Defendant Patrick Reed ("Reed") regarding claims filed against him by Plaintiffs Tommy Ray Hook ("Hook") [Doc. No. 96] and Charles Montano ("Montano") [Doc. No. 98]. Reed argues that he did not violate Plaintiffs' constitutionally protected First Amendment rights and therefore is entitled to qualified immunity. In addition, Reed contends that Plaintiffs' claims are barred in part by the statute of limitations. After considering the law, the evidence, and the arguments propounded in the briefs, the Court concludes that both motions should be granted.

## FACTS

The admissible evidence relevant to Reed's motions, viewed in the light most favorable to the Plaintiffs, is as follows. Defendant Regents of the University of California ("the University") operates Los Alamos National Laboratory ("LANL") through a contract with the United States Department of Energy ("DOE"). Complaint at ¶ 7; Answer at ¶ 7. In 1994, Reed assumed the position of University Auditor for the University. As the University Auditor, Reed oversees the internal audit

program for the University of California system, which includes nine campuses, LANL, two other national laboratories, and the Office of the President. LANL, like the other parts of the University, has an on-site audit director who maintains responsibility for the day-to-day administration of the audit program there, including supervising and managing employees in the audit program. The LANL audit director reports to Reed. From October of 1994 until early 2003, LANL's on-site audit director was Katherine Brittin. As the University Auditor, Reed has no responsibility for hiring, firing, supervising, or managing LANL employees other than the audit director.[1] A LANL press release dated January 23, 2003 states that "the waste, fraud and abuse inquiry function of the Laboratory's Office of Security Inquiries has been transferred to the Audits and Assessments Office, reporting directly to UC Auditor Patrick Reed."

Hook met with Reed and Defendant Richard Marquez in January of 2003 to discuss his upcoming testimony before Congress regarding Katherine Brittin's allegedly illegal actions in the internal audits department, as well as alleged mismanagement, fraud, and security breaches at LANL. Reed claimed that he did not know anything about those issues, which Hook disputes because Reed attended audit meetings at which Hook complained about Brittin's actions. Reed then said to Hook, "You're a whistleblower!" Hook Aff. at ¶¶ 28-30.

In September of 2004, Montano reapplied for the "Internal Audit Group Lead" position, a job for which he had applied earlier that year but which was awarded to someone else. Montano

---

[1] Plaintiffs dispute this assertion by Reed in his affidavit, but other than a vague announcement that LANL's waste, fraud, and abuse inquiry function would "report" to Reed, they offer only their unsupported speculation regarding Reed's authority and participation in personnel decisions.

2

asked Reed to intervene on his behalf so that he would be hired for the job, but Reed did nothing.[2] Montano also complained to Reed about not having any work assigned to him for a period of months and about the lack of credibility in LANL's internal audit function. *See* Montano Aff. at ¶¶ 62, 66, 68.

## DISCUSSION

In its prior Memorandum Opinion and Order entered on this date regarding Defendant Bani Chatterjee's motions for summary judgment, the Court set forth both the legal standard for motions for summary judgment based on qualified immunity, as well as the applicable law governing claims for retaliation under the First Amendment. Rather than repeat those statements, the Court incorporates them by reference herein.

### I.   STATUTE OF LIMITATIONS

Reed argues that, to the extent they arise from events that occurred prior to March 2, 2002, (three years before Plaintiffs filed their Complaint in this case) Plaintiffs' claims for violation of their First Amendment rights pursuant to 42 U.S.C. § 1983 are time-barred. Plaintiffs agree that the three year statute of limitations applies, but they argue that the limitations period does not bar claims arising from Reed's retaliatory conduct after March 2, 2002, even if Plaintiffs' speech that allegedly motivated the retaliation occurred prior to that date. The Court agrees. Therefore, Plaintiffs' First Amendment claim in Count I is time-barred, but only to the extent it is based on alleged acts of retaliation that occurred before March 2, 2002.

For example, in Paragraph 12 of his Affidavit, Hook avers that in 1996, his former supervisor,

---

[2] This is supported by Paragraph 60 of Montano's Affidavit, which also contains speculative and conclusory testimony about the relative qualifications of the individual chosen for the job and hearsay testimony about the results of a 1999 whistleblower investigation.

Katherine Brittin, required him and other auditors to sign a "loyalty oath" and that Reed approved and endorsed Brittin's actions. *See also* Montano Aff. at ¶ 14. However, even if this were deemed to be an "adverse action" by Reed for purposes of Plaintiffs' First Amendment retaliation claims, it is well outside the limitations period.[3] The same is true of Paragraph 16 of Hook's Affidavit and page 293 of Hook's deposition, where Hook says that in 1996 he was told that Reed approved a decision downgrading his classification and putting him in an unassigned position with no management responsibilities.[4] Similarly, the events described in Paragraph 12 of Montano's Affidavit (e.g., that in 1996 he complained to Reed about the loss of objectivity in LANL's internal audit function and about his difficulties with his supervisor, Katherine Brittin, and requested Reed's intervention, but that Reed refused to intervene) are outside the limitations period, to the extent that they could be construed as adverse employment actions against Montano.

## II.     QUALIFIED IMMUNITY

Reed argues that he is entitled to qualified immunity because he did not violate either Plaintiff's First Amendment rights. His first argument in support of that position is that he lacked responsibility for personnel actions at LANL, and therefore he never took an adverse employment

---

[3] There are many other problems with Paragraph 12 of Hook's Affidavit and Paragraph 14 of Montano's Affidavit, including their speculative and conclusory statements that Reed encouraged, approved, and endorsed the implementation of the loyalty oath. Plaintiffs provide no foundation for these statements, which appear to have been made without personal knowledge.

[4] This statement is also based on inadmissible hearsay, since Hook avers that he was told by two other people that Reed had approved the downgrade. *See also* Hook Stmt. at p. 89. Paragraph 38, in which Hook purports to testify regarding what Reed said about him, is also inadmissible hearsay, because Hook is merely repeating what others told him about what Reed said. *See also* Hook Depo. at p. 294. Based on hearsay that he allegedly heard from others, Hook also speculates that Reed opposed the transfer of contract audit responsibilities to Hook's purview. *Id*. at pp. 294-300.

action against either Hook or Montano as required for them to establish that he is liable for retaliation in violation of the First Amendment.

"[P]ersonal participation is an essential allegation in a § 1983 claim." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (quotation omitted). Supervisors are only liable under Section 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under Section 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)). In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006). In addition, "government officials are not vicariously liable for the misconduct of their subordinates. There is no concept of strict supervisor liability under § 1983." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quotation omitted).

In order to establish a Section 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the *active participation or acquiescence* of the supervisor in the constitutional violation by the subordinates. *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001); *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere

5

negligence" is not enough to hold a supervisor liable under Section 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. *Green*, 108 F.3d at 1302. As the Tenth Circuit has explained,

> The first aspect of the affirmative link is the supervisor's own conduct, that he actively participated or acquiesced in the constitutional violation. This evidence may take various forms: the supervisor's personal participation, his exercise of control or direction, or his failure to supervise. A plaintiff may also establish an affirmative link where the supervisor tacitly authorized the offending acts. In the end, however, supervisory liability must be based upon active unconstitutional behavior and more than a mere right to control employees.

*Serna*, 455 F.3d at 1152-53 (internal citations and quotations omitted).

In light of these standards, the Court concludes that neither Hook nor Montano has come forward with sufficient evidence to create a genuine issue of material fact as to whether Reed took part in an adverse employment action against them in retaliation for their speech. A close review of the Plaintiffs' arguments in support of their claims against Reed reveals that they are based on hearsay, conjecture, assumptions, and generalities, but very little actual evidence regarding his participation in the events underlying their claims. It is undisputed that the LANL auditor reported to Reed. Further, both Plaintiffs contend that Reed had oversight of the University's whistleblower and audit functions. From this, Plaintiffs extrapolate that Reed was responsible for approving personnel decisions that Plaintiffs considered unfavorable; however, Plaintiffs must do more than merely assert that Reed had the authority to participate in personnel decisions. They cannot contest Reed's affidavit stating that he had no such authority with mere speculation and assumptions lacking in personal knowledge. Instead, Plaintiffs must present evidence, which they have failed to do.

Hook contends that Reed was responsible for approving the adverse performance evaluation

Katherine Brittin gave him in 1996 and his ensuing placement in an unassigned position for over six years. Hook Resp. (Doc. No. 139) at pp. 20-21. Hook does not argue that Reed took any other adverse action against him. However, Hook presents no evidence to support his position that Reed actively participated in these actions, and his mere status as Katherine Brittin's supervisor is not enough. In addition, the negative performance evaluation, the decision to put him on unassigned status, and the removal of his contract audit work all took place well outside the limitations period and are therefore time barred.

The only adverse employment actions that Montano attributes to Reed are his failure to intervene in 1996 when Montano was transferred from internal auditing to contract auditing, his failure to stop Brittin from forcing auditors to sign a "loyalty oath" in 1996 (which does not even appear to rise to the level of adverse employment action), and his failure to respond to Montano's request that he intervene in Montano's job application in 2004. Montano Resp. (Doc. No. 140) at pp. 18-19. As explained above, the first two events are insufficient, both because there is no evidence of Reed's direct participation beyond his mere status as Brittin's supervisor, and because they are time-barred.

The third event—Reed's non-intervention in Montano's 2004 job applications—is not time-barred. However, Montano has not properly supported it with evidence. In his brief, Montano argues that Reed knew of his applications for the Internal Audit Group Lead position but refused to intervene to ensure that the hiring manager fairly considered Montano for the position. *Id*. at p. 5, 7, 13-14; Montano Aff. at ¶ 60. The problem with this contention is that Montano supports it primarily with Paragraph 60 of his Affidavit. In that paragraph, Montano implies that the selection process was unfair and that those involved in making the decisions were biased against him, but

7

beyond this conclusory statement Montano offers no actual evidence to support that conclusion. Apparently Montano assumes that the selection process was unfair because he did not get the job. But, he offers no evidence to support that assumption, such as information regarding his qualifications compared to the persons who were chosen for the position.  The fact that LANL managers did not choose Montano for the job is not, without more, evidence that the selection process was a result of improper retaliation.  Under Rule 56(e), only statements "made on personal knowledge" will support a motion for summary judgment; statements of mere belief must be disregarded.  *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 831 (1950) (affidavit in support of motion for summary judgment made on information and belief does not comport with Rule 56(e)), *overruled on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969).  Furthermore, as explained above, the record is devoid of evidence that Reed had authority to make personnel decisions within LANL and therefore that the power to "intervene" as Montano requested; Montano and Hook's unsupported beliefs and conclusions on that subject do not create a fact issue for the jury.

In short, the Court concludes that Reed is entitled to summary judgment on both Hook's and Montano's First Amendment retaliation claims against him.

**IT IS THEREFORE ORDERED** that *Defendant Patrick Reed's Motion for Summary Judgment on Claims by Tommy Ray Hook Based On Qualified Immunity and Other Grounds* [Doc. No. 96] is **GRANTED**, and *Defendant Patrick Reed's Motion for Summary Judgment on Claims by Charles Montano Based On Qualified Immunity and Other Grounds* [Doc. No. 98] is **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant Patrick Reed is entitled to summary judgment on the First Amendment retaliation claims asserted against him

in Count I of Plaintiffs' Amended Complaint, and those claims against Defendant Reed are hereby **DISMISSED WITH PREJUDICE**. Plaintiffs' California Workers' Protection Act claims against Defendant Reed in Count II of the Amended Complaint remain pending.

_____
**UNITED STATES DISTRICT JUDGE**